# Preiss *v.* Parker.

*Bill in Equity to Enjoin Use of Party-wall, without Contribution.*

1. *Party-wall; liability for cost of, as between adjacent proprietors, and injunction against use.*—When a wall is erected by the owner of a lot, on the boundary line between his own and the adjoining lot, resting partly upon each, the law imposes no obligation on the owner of the adjacent lot to contribute to the cost of its erection; nor will a court of equity enjoin him, or a subsequent purchaser, from the use of the wall without making contribution, in the absence of a promise to contribute.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 15th August, 1879, by Mrs. Preiss, against Mrs. T. R. Parker and her husband, James Parker; and sought to enjoin and restrain the defendants from using, in the erection of a brick store on a lot in the city of Montgomery which belonged to Mrs. Parker, a wall which the complainant had built in the erection of a store on the adjoining lot, which belonged to the complainant. The complainant bought her lot from David Benjamin, and received a conveyance from him dated the 15th August, 1877; and she built a brick store-house on said lot during the year 1878. The bill alleged that, on the erection of this house," by an agreement and understanding with DeWitt C. Taylor, who was then the owner in fee of the east half of said lot No. 4, that your oratrix should erect upon the east side of said west half of said lot a party-wall, six inches thereof resting upon the east half of said lot, she built said party-wall as above stated and agreed on." Mrs. Parker afterwards bought the east half of said lot from said D. C. Taylor, his conveyance to her being dated the 30th August, 1878, and containing full covenants of warranty. The bill alleged that Mrs. Parker " has commenced the erection of a brick house on the east half of said lot so purchased by her, and threatens to use the said party-wall as a support for said building, and as a support for the sleepers of said building now in course of erection. Your oratrix has forbidden the use of said party-wall

by said T. R. Parker, unless she first pays for such use, and has demanded payment for such use of said wall ; and she has failed and refused to pay the same, and is still proceeding to rest the sleepers of said building upon said party-wall, and to use said wall as a support for her said building, without the consent, and against the remonstrance of your oratrix.'' The bill alleged, also, that the cost of the party-wall was $460 ; that the defendants owned no property except what belonged to Mrs. Parker's statutory separate estate ; and that the complainant was remediless in the premises, and would lose the value of one-half of the wall, unless the defendants were enjoined as prayed.   The prayer of the bill was, that the defendants be enjoined and restrained from the further use of the party-wall, '' until your oratrix is paid for such use of said wall,'' and for general relief.

An amended bill was afterwards filed, alleging that, " at the time your oratrix commenced building said party-wall, the said T. R. Parker knew that said party-wall was being built ; that she was then the equitable owner of said east half of said lot, and knew of, and acquiesced in the building of said wall by your oratrix, with the expectation that one-half of said wall would be paid for by said T. R. Parker, when she should use the same ; and that said defendant recognized her liability to thus pay for one-half of said wall when she should use the same, and promised to pay therefor."

Mrs. Parker answered the bill, admitting the erection of the wall by the complainant, and that it rested partly on the east half of the lot ;  denying the alleged agreement with Taylor; averring that, if any such agreement or promise was made by him, it was verbal only, and was his personal contract, did not pass with the land, nor impose any legal obligation on her ; alleging, also, that she had no notice of such agreement, if any was made, and claiming protection against it as a *bona fide* purchaser for value ; and she demurred to the bill for want of equity, assigning various causes of demurrer.   James Parker adopted the answer and demurrer of his co-defendant. No answers were filed to the amended bill, the amendment being allowed and filed when the cause was submitted for final decree.

The depositions of Philip Preiss, who was the complainant's husband, John T. McDonald, and Charles R. Dickinson, were taken on the part of the complainant ; and the deposition of Mrs. Parker herself was the only one taken for the defendants.   *Preiss* thus testified, as to the circumstances under which the wall was built, and a subsequent promise by Mrs. Parker to pay a part of the cost :  " Complainant, for whom I was acting, built said wall, partly on the east half of

said lot, in pursuance of an agreement made by me, as her agent, with Jno. T. McDonald, on behalf of said Taylor, which agreement was made in August, 1877. Said building was commenced in July, 1878. At the time Mrs. Parker bought the east half of said lot, said east wall had already been built. At the time she purchased said east half, she knew that said building was being erected; but I don't know whether she knew how it was being built. In August, 1879, when Mrs. Parker was about laying the joists of her building on said east half, she sent for me, and asked me not to prevent the workmen from cutting holes in the wall for the joists; that she would pay me for it, and asked me how much it was worth. I told her $200. This she refused to pay, but offered $150. Afterwards she said she would leave it to two bricklayers, who, in case they could not agree, were to call in a third, and that she would pay the amount agreed on by them. I offered to take the lowest amount named by either of said bricklayers, which was $223, which she refused to pay." McDonald thus testified, in regard to the conversation between Preiss and himself: "Some time prior to January, 1877, I had a conversation with said Preiss in regard to said wall. He wished to erect a party-wall between the east and west halves of said lot. I told him to go ahead—that it would be all right. The authority so given by me to him, to erect said wall partly on the east half of said lot, was verbal; and I acted as the agent of said Taylor in giving such authority."

*Charles R. Dickinson*, who built Mrs. Parker's house under contract with her, thus testified: "In speaking of said building to be erected for her, I told Mrs. Parker that she must be aware there was a party-wall between her and Mrs. Preiss. She said she was, and that it would all be satisfactorily arranged and paid for. She said that she expected to use the party-walls on both sides of her lot, and based her contract with me on such use. She said that she would pay for such use, and, in my contract with her, she indemnified me against loss and damage by any detention occasioned by trouble about said party-walls. While I was building said house for her, she asked me to estimate the value of said east wall of Mrs. Preiss' house. The first estimate I made was about $223. She afterwards asked me to estimate the value at the rate of sixteen bricks to the foot; which I did, at $183. . . When I first began the building, she always said that she would pay for the walls, and that she and Mr. Preiss would make it all right. Afterwards, she said that she would not pay more than $150. Then she agreed to leave it to three bricklayers, of whom I was one. My estimate being the lowest, Mr. Preiss agreed to take it, but she refused to pay it."

[Preiss v. Parker.]

Mrs. Parker herself thus testified : "The person from whom I bought said lot did not inform me, at any time before said purchase, that there was any contract or agreement, by which the owner of the west half of said lot should build a party-wall, partly resting on the east half of said lot, and that whoever built on said east half should, upon using the said wall, contribute one-half of the cost of the same to the person who built it, nor any other agreement of similar import. I had no knowledge, before said purchase, of any such agreement." [In answer to cross-interrogatories.] I think I bought the east half of said lot before Mrs. Preiss began building said wall. I know I had contracted for the purchase of it, and made a payment on account of it, before she began building ; but I am not certain whether I had received my deed from Mr. Taylor, who was in the north, until afterwards. I did state, at or before I commenced building on my lot, to Mr. Charles R. Dickinson, that I had a right to join Mrs. Preiss' wall, and that one-half thereof was on my lot. I did not ascertain this until after Mrs. Preiss' building had been completed. I requested said Dickinson to make an estimate of the value of said wall, while I was building. In my contract with him, I told him I had a right to join said wall. I did offer to pay Mrs. Preiss some consideration for the use of said wall, or, rather, to buy that portion of said wall which was on my land. I made this offer, because said Preiss had threatened to stop my building, by injunction. I offered at first $150, and afterwards $182.92, to Mr. Williamson, the solicitor for Mrs. Preiss."

On final hearing, on pleadings and proof, the Chancellor dissmissed the bill ; and his decree is now assigned as error.

R. M. WILLIAMSON, for appellant, cited *Day v. Eaton*, 119 Mass. 513 ; *Huck v. Flentye*, 80 Illinois, 258 ; *Campbell v. Mesier*, 4 John. Ch. 334 ; Washburn on Easements, 537 ; 2 Greenl.

GUNTER & BLAKEY, *contra*, cited *Bisquay v. Jennelot*, 10 Ala. 245 ; *List v. Hornbrook*, 2 W. Va. 340 ; *Orme v. Day*, 5 Fla. 385 ; *Sherwood v. Cisco*, 4 Sandf. N. Y. 480 ; 2 Washb. Real Property, 334 ; Wait's Actions and Defenses, Vol. 2, p. 723 ; *Rees v. Watertown*, 19 Wallace, 107.

PER CURIAM.—The equity of the bill depends upon the promise, or agreement, alleged to have been made by Mrs. Parker, to pay for the use of the wall erected by appellant, partly on her own lot, and partly on the adjoining vacant lot, of which Mrs. Parker became the purchaser after the erec-

[Street v. Nelson et al.]

tion of the wall ; for, in the absence of the promise, no liability or duty to make compensation for the use of the wall would rest upon Mrs. Parker.—*Bisquay v. Jennelot*, 10 Ala. 245 ; *Antomarchi v. Russell*, 63 Ala. 356. We concur in the opinion of the Chancellor, that the evidence does not satisfactorily establish the making of the promise, though it may show that, at one time, Mrs. Parker was willing to pay a particular sum, if that was received as full satisfaction of the claim made upon her, and she was not obstructed or delayed in the erection of her building, for the use of which the wall was necessary. Upon the authority of the cases to which we have referred, the decree of the Chancellor is affirmed.