BRIERRE et al., Respondents, v. CEREAL SUGAR COMPANY, Appellant.

St. Louis Court of Appeals, November 17, 1903.

1.  **Account:** ACTION ON: SUFFICIENT STATEMENT.   In an action for goods sold and delivered, an account, giving the names of the parties, the place and date of the transaction, and stating that it is for "100 bbls. of Imperial Brand Austrian Sugar, 31,874 lbs., $4.95, $1,577.76," is a sufficient statement to admit evidence in its support.

2.  **Practice:** QUANTUM MERUIT: VARIANCE.   A party may sue upon *quantum meruit,* and recover for goods sold and delivered, though an express contract is proven at the trial.

3. ———: PLEADINGS: ABANDONED COUNT: WHEN NOT ADMISSIBLE IN EVIDENCE. An abandoned count of the petition, which relates to a different transaction from the one upon which plaintiff proceeds to trial, was properly excluded from evidence by the trial court.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss,* Judge.

AFFIRMED.

*E. T. & C. B. Allen* for appellant.

(1) There was no such account filed as is required by section 630, Revised Statutes 1899. It was error to admit any evidence in support thereof. Dawson v. Quillan, 61 Mo. App. 676. (2) There was a fatal variance between the pleadings and the proof. The petition alleges a tacit contract to pay the reasonable value of certain goods. The proof disclosed an entirely different agreement. Hayes v. Bunch, 91 Mo. App. 467; McCormack v. Road, 154 Mo. 202; Squire v. Brew. Co., 90 Mo. App. 462; Evans v. Dugan, 81 Mo. App. 63; Lunitz v. King, 93 Mo. 518; Grocer Co. v. Clements, 69 Mo. App. 448; Albermarle v. Wilcox, 103 N. C. 34; Waldo v. Belcher, 11 Ind. 609; Schermerhorn v. Herold, 81 Mo. App. 466; Richard v. Moore, 38 L. T. N. S. 841. (3) The court erred in admitting in evidence the abandoned and unperformed contract of sale. Cases cited under preceding point. (4) The court erred in excluding from the evidence the abandoned second counts in the original and amended petitions. They were inconsistent with the findings of the court. Mahon v. Grinnell, 94 Mo. App. 171; Walser v. Wear, 141 Mo. 443; Busnell v. Ins. Co., 91 Mo. App. 522; McAdow v. Miltenberger, 75 Mo. App. 357.

*Abbott & Edwards* for respondent.

(1)   Where a party fails to perform his work according to the stipulations of his agreement. he can not recover on a special contract, but if the services rendered by him, or materials furnished are valuable to the other party, and are accepted by such party, then he will be liable to pay the actual value of the work performed or material furnished, not exceeding the contract price, after deducting any damage which had resulted from the breach of the agreement.   Eyerman v. Mt. Sinai Cemetery Ass'n, 61 Mo. 491; Keith v. Ridge, 146 Mo. 90; Roskilly v. Steigers, 96 Mo. App. 576; Ahern v. Boyce, 19 Mo. App. 552; Austin v. Keating, 21 Mo. App. 30; Ibers v. O'Donnell, 25 Mo. App. 120; Gregg v. Dunn, 38 Mo. App. 283; Freeman v. Aylor, 62 Mo. App. 613.
(2)   The buyer is deemed to have accepted the goods when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller.   Benjamin, Principles of Sales, p. 161.

### STATEMENT.

This suit as originally brought appears to have embraced two causes of action, pleaded in distinct counts, but voluntarily plaintiffs struck out the second count and proceeded to trial before the court upon the first count, in which they averred that about the eighth day of October, 1901, at special instance and request of defendant, they sold and delivered to it certain goods and merchandise of the value and for the price of $1,577.76, the items of which, as well as the dates when the various articles were sold and the prices charged therefor, respectively, appear from the bill of items thereto annexed and marked exhibit "A;" that the prices charged for said goods are and were at the time when said goods were sold and delivered, reasonable and proper, and defendant promised and agreed to pay same but though requested, has refused and refuses to pay therefor, and

judgment with interest from the date of demand was prayed.

The exhibit referred to was as follows:

"St. Louis, Mo., October 3, 1901.
"Cereal Sugar Company, St. Louis, Mo.
"To Theo. Brierre's Sons, Dr.
"100 Bbls. 'Imperial Brand' Austrian
sugar, 31,874 lbs., $4.95..............$1,577.76."

For answer defendant filed a general denial.

The situation exhibited by the testimony appears to have been that plaintiffs, merchants in New Orleans, had consigned a lot of sugar for sale to a merchandise broker in the city of St. Louis, consisting of two carloads containing 100 barrels and one car of 300 sacks, and October 3, 1901, the broker sold the 100 barrels at $4.95 per 100 pounds to defendant, and embracing 31,874 pounds at $1,577.72. In the course of his examination the broker identified the following sale-slips and letter which were sent defendant by him and admitted over objection:

"St. Louis, Oct. 3, 1901.
"Sold to Cereal Sugar Co., St. Louis. For Acc't of Theo. Brierre's Sons, New Orleans, 100 bbls. Imp'd Granulated Sugar, $4.95, delivered at warehouse. Terms net cash, payable to Third Nat'l Bank. Ship via after paying freight and other expenses.—M. F. S. Boswell, per B."

"St. Louis, Oct. 4, 1901.
"Sales made for account of Theo. Brierre's Sons, New Orleans, to Cereal Sugar Co., St. Louis, by M. F. S. Boswell. 100 bbls. Imperial Gran. Sugar, 31,874 at $4.95, $1,577.76, less demurrage and switching. Terms net cash. Memorandum."

"St. Louis, Oct. 8, 1901.

"Cereal Sugar Company, City.

"Gentlemen: Please find enclosed a'c for the 100 bbls. Imported Granulated Sugar sold to you, also certificate of weights and memo. bill. The freight has been prepaid so that after deducting the demurrage and switching charges on both cars to the store, Messrs. Theo. Brierre's Sons wish you to pay balance to the Third Nat'l Bank here to the credit of the bank that sent the B-L, and oblige,

"Very truly,

"M. F. S. BOSWELL."

Delivery of the sugar was made October 8th, and defendant began its use, consuming fifteen barrels when defendant claimed and notified the broker that the sugar was discovered to be in poor condition. In response to the complaint, he called on defendant's representatives on the evening of October 10th, and with them examined the sugar. Defendant charged other deteriorations but the chief fault found at this inspection appeared to have been, that the barrel heads were out of about ten or twelve barrels and, probably in course of transportation, cinders had gotten in such exposed barrels and the broker deposed that, as he believed this condition could not extend far down in the sugar, he proposed to the officers of defendant that they could remove the damaged sugar, and he would make good to them to the extent of the unmerchantable sugar in the one hundred barrels from the sugar contained in the three hundred bags then stored in defendant's warehouse; that this proposition seemed perfectly satisfactory, no objection being made. On the morning of the eleventh of October, defendant's place of business and its contents were visited by fire and the sugar in the barrels remaining were destroyed. It further appeared in evidence that the inventory of the stock of defendant, prepared for the adjusters of the insurance included

eighty-five barrels of the sugar involved in this controversy, fifteen barrels having been used by defendant.

The testimony of defendant was in conflict with the statements of the merchandise broker, and tended to establish that the sugar had been rejected by reason of its bad and damaged condition, having considerable black specks through it, also being injured by water and in some instances dried out, causing it to become very hard, and that the agreement by the defendant with the broker was, that as defendant was in urgent need' of sugar it could use a few barrels, and whatever charge, if any, for separating the inferior part from the good, plaintiff would pay, and whatever quantity defendant used would be charged and paid for.

The defendant, at close of plaintiff's testimony and at the close of the whole case, asked an imperative declaration that under the pleadings and evidence, the plaintiffs were not entitled to recover, which the court refused. At the instance of plaintiffs, the court declared that under the law and the evidence, the plaintiffs were entitled to recover from defendant in a sum equal to the reasonable value of the sugar in controversy, as shown by the evidence. No other declarations were submitted by defendant, and the court made a finding in favor of plaintiffs and gave them judgment for the reasonable value of the sugar, $1,419.90 with interest.

REYBURN, J. (after stating the facts as above.) —
1. The case of Dawson v. Quillin, 61 Mo. App. 672, invoked by appellant to maintain the position sought to be upheld, that there was no account filed by plaintiffs here sufficient to comply with the statute, upon examination will be found merely to reiterate, that where a pleading does not comply with the statutory requirement, the adverse party may exercise his election between moving to have it made more definite, or at the trial object to the introduction of any evidence to support it, the latter

being the remedy or course determined on and attempted by appellant in this action; but the authority cited shows that the pleading discussed did not contain the items of the accounts nor was any exhibit attached. The transaction between plaintiffs and defendant involved the purchase of one hundred barrels of sugar of the brand and description detailed in the exhibit, which also showed the quantity and price and fully complied with the statute.

2.   There was no departure from the issues of the pleadings as charged by appellant, even though the plaintiff's form of action may be conceded to be *quantum meruit,* while their proof was directed to establish an express contract.   Whatever may be the rule prevailing in other States, it is well established in this State that a party may sue upon *quantum meruit* when an express contract existed and is proven at the trial; but the contract price will limit the recovery.   In the words of the able commissioner, in Mansur v. Botts, 80 Mo. 651:   "It is a rule of common law long established, that *indebitatus assumpsit* will lie to recover the stipulated price due on a special contract when the contract has been fully executed and it is not necessary to declare upon the the special contract."   Such was the rule at common law, and the code has not modified it.

In Keith v. Moore, 146 Mo. 90, the Supreme Court reviewed the earlier cases and approved the rules enunciated, quoting:   "If one party, without the fault of the other, fails to perform his side of the contract in such a manner as to sue on it, still, if the other party has derived a benefit from the part performed, it would be unjust to allow him to retain that without paying anything.   The law therefore, generally implies a promise on his part to pay such remuneration as the benefit conferred is reasonably worth, and to recover that *quantum* of remuneration, an action of *indebitatus assumpsit* is maintainable.   Yeates v. Ballentine, 56 Mo. 535, and cases cited.   The established rule extracted and

deduced from all the cases is, that where a party fails to perform his work according to the stipulations of his agreement, he can not recover on the special contract; but if the services rendered by him or the material furnished, are valuable to the other party, and are accepted by such party, then he would be liable to pay the actual value of the work performed or the materials furnished, not exceeding the contract price, after deducting for any damage which had resulted from a breach of the agreement. Eyerman v. Mt. Sinai Cemetery Association, 61 Mo. 491. The principle upon which this rule is based is so fair, just and equitable that while at first its application was limited to a certain class of contracts, it has now become in this State a rule of general application to all contracts where it can be applied without doing the defendant injustice.''

In Moore v. Gaus, 113 Mo. 107, the Supreme Court declares that where the contract is performed, the plaintiff may sue in assumpsit using the common count of *quantum meruit*, and that it was allowable to unite a count in assumpsit with one on the contract in the same petition.

3. The second count of the petition which the plaintiffs abandoned, contained allegations that defendant, a warehouseman, agreed with plaintiffs for the consideration of two cents per bag per month to store three hundred sacks of coffee of plaintiffs, and also to take out sufficient insurance thereon to protect plaintiffs against loss or damage as result of fire, the premiums for such insurance to be advanced by defendant and re-paid by plaintiffs. An averment of violation of this contract was made and judgment asked for the damages incurred in consequence. Defendant tendered this abandoned pleading in evidence, and it was excluded by the court as irrelevant, and in this ruling we find no error; this section of the petition concerned another transaction different from that of the basis of the first count, and had no relevancy to the controversy on trial.

No other assignments of error justifying consideration have been presented, the finding of fact by the trial court is supported by substantial testimony and will not be disturbed. The judgment is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.